# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 78603-2-I |
| Respondent, | |
| v. | DIVISION ONE |
| ZACHARY ALLEN ANDERSON, | UNPUBLISHED OPINION |
| Appellant. | FILED: January 21, 2020 |

APPELWICK, C.J. — Anderson challenges the judgment and sentence imposed following his jury conviction for felony violation of a no-contact order and interfering with domestic violence reporting. He contends that prosecutorial misconduct violated his right to a fair trial. We affirm Anderson's convictions and remand only to strike the criminal filing fee, DNA collection fee, and interest on his nonrestitution legal financial obligations from the judgment and sentence.

## FACTS

Zachary Anderson and Michele Davis began dating in 2004 and have lived together off and on since that time. The couple have two children together. According to Davis, the relationship was "[t]umultuous."

In September 2016, Anderson was homeless. A domestic violence no-contact order prevented Anderson from having any contact with Davis. Nevertheless, Anderson showed up at the apartment Davis shared with the children and asked if he could stay there. Davis allowed him to do so.

On September 15, Anderson and Davis were watching a movie after the children were asleep. Anderson and Davis began arguing. To defuse the situation, Davis went outside for a cigarette. Anderson yelled at Davis to get back inside. When Davis attempted to return, Anderson blocked her entry back into the apartment. Davis tried to move past Anderson, and Anderson hit her in the nose with a closed fist. Davis's nose began bleeding and she got past Anderson and went into the bathroom. Anderson followed Davis into the bathroom. He twisted her right arm behind her back, slammed her head into the wall, and pinned her there. Anderson held Davis against the wall for approximately a minute while she screamed for him to let her go. When Anderson released Davis, he pulled his shirt off, got into a boxing stance, and said, "Let's go." Anderson began inching towards Davis. Davis attempted to kick Anderson, causing her to reinjure a sprained ankle and cry out in pain. Anderson called Davis a "baby" and walked out. Davis fled through the apartment's front door calling for help. As she did, Anderson slammed the door and locked Davis out.

Neighbors called 911. Officer Kristopher Muñoz and Officer Brady Galloway responded to the apartment complex. The officers attempted to enter the apartment but Anderson refused to come to the door. The officers eventually used a breaching tool to force the door open and arrested Anderson. The following day, Davis found her cell phone taken apart and the pieces hidden throughout the apartment.

The State charged Anderson with felony violation of a no-contact order and interfering with domestic violence reporting. The State alleged as aggravating

factors that the crimes were committed against a family member and within the sight or sound of minor children. A jury convicted Anderson as charged. Anderson appeals.

## DISCUSSION

Anderson argues that the prosecutor committed misconduct by purposefully eliciting evidence in violation of a pretrial ruling and improperly bolstering Davis's credibility. He contends that the cumulative effect of this misconduct denied him a fair trial.

We review allegations of prosecutorial misconduct for abuse of discretion. State v. Lindsay, 180 Wn.2d 423, 430, 326 P.3d 125 (2014). To prevail on a claim of prosecutorial misconduct, a defendant must establish that the prosecutor's conduct was both improper and prejudicial in the context of the entire record and the circumstances at trial. State v. Thorgerson, 172 Wn.2d 438, 442, 258 P.3d 43 (2011). To establish prejudice the defendant must prove that there is a substantial likelihood that the instances of misconduct affected the jury's verdict. Id. at 442-43. And, if the defendant failed to object to the challenged argument at trial, the claim is waived unless the argument is so flagrant and ill-intentioned that it causes an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury. State v. Russell, 125 Wn.2d 24, 86, 882 P.2d 747 (1994).

Prior to trial, the State sought to admit evidence of six of Anderson's prior assaults of Davis pursuant to ER 404(b). In one of the previous assaults, Officer Galloway was the responding officer. Davis told Officer Galloway that Anderson came into her house at 3:15 a.m., and when Davis tried to call the police, Anderson

3

broke her cell phone. Davis also told Officer Galloway that Anderson head-butted her the week prior, causing swelling and bruising, and that she was very afraid of him. The trial court excluded the evidence, determining that its prejudice to Anderson outweighed its low probative value. The trial court did not incorporate its oral ruling into a written order.

During the direct examination of Officer Muñoz, the prosecutor asked whether he had been to Davis's apartment before.

[PROSECUTOR:] When you received that call, did you recognize the address?

[OFFICER MUÑOZ:] I recognized the apartment complex, yes. We respond there fairly regularly, so I knew the location.

[PROSECUTOR:] Did you know who lived in the apartment number you were being dispatched to?

[OFFICER MUÑOZ:] I did not.

[PROSECUTOR:] When you got to the call, did you recognize the apartment and knew who lived there?

[OFFICER MUÑOZ:] I had been there in the past, but I -- it was an incident that I really couldn't recall at the time, and I had known that the victim in the case from prior incidents, but --

[DEFENSE COUNSEL]: Your Honor, I would object.

THE COURT: Objection sustained. The response is stricken. The jury is instructed to disregard it.

[PROSECUTOR:] Do you know who resides in A103 in in the Somerset complex?

[OFFICER MUÑOZ:] Yes.

[PROSECUTOR:] Who resides there?

[OFFICER MUÑOZ:] Michele Davis.

4

[PROSECUTOR:] Anyone else reside there with her?

[OFFICER MUÑOZ:] Her two children, to the best of my knowledge.

During the direct examination of Officer Galloway, the prosecutor asked about his personal experience with Davis's apartment.

[PROSECUTOR:] Do you recall hearing a 911 call for service at the YWCA or the Somerset Apartments?

[OFFICER GALLOWAY:] I do.

[PROSECUTOR:] Did you recognize that address when it came out?

[OFFICER GALLOWAY:] I did.

[PROSECUTOR:] Specifically, the Unit No. A103?

[OFFICER GALLOWAY:] I did.

[PROSECUTOR:] Do you know who resides at Unit A103?

[OFFICER GALLOWAY:] I do now. I didn't recall specifically the names at the time.

[PROSECUTOR:] But you are aware from your total experience who lives there?

[OFFICER GALLOWAY:] Correct.

[PROSECUTOR:] Who lives there?

[OFFICER GALLOWAY:] The defendant, Mr. Anderson, and then Michele Davis.

[PROSECUTOR:] Were there children that lived there?

[OFFICER GALLOWAY:] Yes.

Anderson did not object to Officer Galloway's testimony.

Anderson argues that the prosecutor committed reversible misconduct by eliciting evidence that Davis and Anderson had prior contacts with the police, in

5

violation of the trial court's ruling. He contends that the prosecutor's purpose was to suggest that Anderson had previously assaulted Davis.

Under ER 404(b), evidence of other crimes, wrongs, or acts is presumptively inadmissible to prove character and show action in conformity therewith. State v. Powell, 126 Wn.2d 244, 258, 893 P.2d 615 (1995). Here, the trial court prohibited the State from introducing evidence of prior bad acts: namely, that Anderson had assaulted Davis several times in the past. Neither Officer Muñoz nor Officer Galloway suggested that Anderson had assaulted Davis. "While being known to a police officer may be suggestive of bad acts, it is certainly not conclusive." State v. Clemons, 56 Wn. App. 57, 62, 782 P.2d 219 (1989). The questioning by the prosecutor was relevant to establish who lived in the apartment, and the fact that Anderson and Davis had a domestic relationship in which they had previously lived together.[1]

As to Officer Muñoz, Anderson fails to show that he was prejudiced by the prosecutor's questioning. Officer Muñoz testified only that he knew Davis and her children lived in the apartment. He testified that he did not remember why he had been to Davis's apartment before. Moreover, the trial court instructed the jury to disregard the testimony. Absent evidence to the contrary, we presume that the jury followed the trial court's instructions. State v. Davenport, 100 Wn.2d 757, 763-64, 675 P.2d 1213 (1984). Anderson presents no evidence suggesting that the jury failed to follow the trial court's instruction to disregard the stricken testimony.

---

[1] Anderson argues that the State had already established these facts through Davis's testimony. But, the State is "entitled to prove its case by evidence of its own choice." Old Chief v. U.S., 519 U.S. 172, 186, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997).

As to Officer Galloway, Anderson did not object to the questioning. When a trial court has granted a motion in limine, the party that sought the order must object to any potential violation in order to preserve the error for appeal. State v. Weber, 159 Wn.2d 252, 271-72, 149 P.3d 646 (2006). Anderson has thus waived review. Even if this court were to consider Anderson's claim, he must show that the State's questioning was so flagrant and ill-intentioned that it resulted in an enduring prejudice that could not have been neutralized by a jury instruction. Anderson fails to do so. Officer Galloway testified only that he knew who lived in Davis's apartment. He did not testify that he had ever been there, nor that he had been involved in Anderson's prior assaults of Davis. And, the jury was already aware that a domestic violence no-contact order prevented Anderson from contacting Davis.[2] The jury could reasonably have inferred that Anderson had previously committed a crime of domestic violence against Davis.

Anderson next contends that the prosecutor improperly bolstered Davis's testimony by suggesting the police found her to be credible. It is misconduct for a prosecutor to state a personal belief as to the credibility of a witness or the guilt of a defendant. Lindsay, 180 Wn.2d at 437. But, a statement is misconduct only if it

---

[2] The order provided as follows:

Based upon the record both written and oral, the court finds that the defendant has been charged with, arrested for, or convicted of a domestic violence offense, that the defendant represents a credible threat to the physical safety of the protected person, and the court issues this Domestic Violence No-contact Order under chapter 10.99 RCW to prevent possible recurrence of violence.

is a clear and unmistakable expression of a personal opinion. State v. Brett, 126 Wn.2d 136, 175, 892 P.2d 29 (1995).

Anderson challenges the testimony of Officer Muñoz and Officer Galloway that they had probable cause to arrest Anderson, and that they arrested him and transported him to jail.[3] He contends that this constituted vouching for Davis's credibility because it suggested the police believed that Anderson assaulted her. But, Anderson cites to no authority holding that an officer's description of an arrest of a criminal defendant is an improper opinion on a witness's veracity or a defendant's guilt.

Anderson also contends that the prosecutor vouched for Davis's credibility by referring to her as the "victim" during the direct examination of Officer Muñoz. But, Anderson did not seek to prohibit use of the term and did not object during Officer Muñoz's testimony. Furthermore, we have held that the use of the term "victim" does not ordinarily "convey to the jury the court's personal opinion of the case." State v. Alger, 31 Wn. App 244, 249, 640 P.2d 44 (1982).

Anderson contends that the cumulative effect of this misconduct denied him the right to a fair trial. The cumulative error doctrine applies where multiple trial errors combine to deny the accused a fair trial, even if the errors individually would not warrant reversal. In re Det. of Coe, 175 Wn.2d 482, 515, 286 P.3d 29 (2012). Because Anderson has not demonstrated error, he was not deprived of a fair trial.

---

[3] Anderson objected to the testimony of Officer Galloway but not to that of Officer Muñoz.

Finally, Anderson challenges the criminal filing fee and DNA (deoxyriboneucleic acid) collection fee imposed as part of his sentence, as well as the imposition of interest on his legal financial obligations. Anderson contends, and the State concedes, that the fees and interest must be stricken because he is indigent. Former RCW 36.18.020(2)(h) (2015) was amended to provide that the filing fee "shall not be imposed on a defendant who is indigent." LAWS OF 2018, ch. 269, § 17, at 1632. And, former RCW 10.82.090 (2015) was amended to provide that "no interest shall accrue on nonrestitution legal financial obligations." LAWS OF 2018, ch. 269, § 1, at 1615. Although these fees were mandatory when imposed, the Washington Supreme Court held in State v. Ramirez, 191 Wn.2d 732, 747, 426 P.3d 714 (2018), that these amendments apply to cases that were not yet final when the amendments were enacted. We accept the State's concession and remand for the trial court to strike these fees from the judgment and sentence.

In a pro se statement of additional grounds, Anderson contends that he received ineffective assistance of counsel because his trial attorney was sleeping during the trial. Anderson also claims that he was not provided his prescribed medications for post-traumatic stress disorder and attention deficit disorder, and thus he was incompetent to stand trial. But, these arguments rest on allegations that are outside the record and therefore cannot be considered on direct appeal. State v. McFarland, 127 Wn.2d 322, 337-38, 899 P.2d 1251 (1995). A defendant wishing to raise issues involving evidence or facts not in the record must do so through a personal restraint petition.

9

We remand for the trial court to strike the criminal filing fee, DNA collection fee, and any nonrestitution interest from the judgment and sentence. In all other respects, we affirm.

WE CONCUR: